UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID HUNTER,

Plaintiff,

v. Case No. 07-14490

PETER GREEN, SECRETARY OF THE ARMY, HONORABLE AVERN COHN

Defendant.

______________________________/

**MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT**
**AND**
**DISMISSING CASE**

I. Introduction

This is an employment case. Plaintiff David Hunter (Hunter) is suing defendant, Peter Green, in his capacity as the Secretary of the Army (the government) claiming discrimination on the basis of his race (Caucasion), sex (male), age (61) and retaliation under Title VII, 42 U.S.C. § 2000e et seq. and the Age Discrimination in Employment Act, 29 U.S.C. § 621-634.

Before the Court is the government's motion to dismiss or for summary judgment on all of Hunter's claims. The government argues that (1) Hunter's discrimination claims should be dismissed for failure to timely exhaust his administrative remedies, or (2) summary judgment is appropriate for failure to present sufficient evidence of a hostile work environment, and (3) summary judgment is appropriate on Hunter's retaliation claim because Hunter has not made out a prima facie case or rebutted the

government's legitimate non-discriminatory reasons for its actions.

For the reasons that follow, the motion is GRANTED.

## II. Background

### A. General

Hunter has been employed since 1991 as Mechanical Engineering Technician at the U.S. Army Research, Development and Engineering Command (TARDEC), a tenant organization at the U.S. Army Tank-Automotive and Armaments Command (TACOM) in Warren, Michigan.

### B. Administrative Proceedings[1]

On September 22, 2004, Hunter contacted an EEO counselor asserting that he had been discriminated against on the basis of his race, sex, and age which resulted in a hostile work environment. Hunter essentially said he had been denied career and promotional opportunities, given work assignments below his education and work experience, and denied requests for training.

On November 9, 2004, Hunter filed a formal complaint of discrimination reasserting his claims.

On November 22, 2004, TACOM's EEO officer notified Hunter that, based on her review of his complaint, the following issue was accepted for investigation:

> Wherein you alleged harassment (non-sexual) and management has held you back from career and promotional advancements resulting in a hostile working environment [at TARDEC]

On March 3, 2005, an investigator for the Office of Complaint Investigators (OCI)

---

[1]At some point during the administrative proceedings, Hunter obtained counsel, who continues to represent him in the case before the Court.

of the Department of Defense Civilian Personnel Management Service conducted a fact-finding conference with regard to Hunter's complaint during which the following individuals were examined under oath: Hunter, Allen Kapinos, Arthur Adlam (Associate Director - management). The OCI investigator also received written interrogatory responses from the following individuals: Doug Petron, Padmanabham Cherukuri, Gary Johns, Vincent Moretti, and Frank Pitts. Following the fact-finding conference, the OCI investigator issued a Report of Investigation, essentially concluding that Hunter's claims were not substantiated. The Report of Investigation states in relevant part:

> The evidence collected in this case shows Complainant belongs to a protected group by virtue of his race (Caucasian), color (white), sex (male) and age (57).
>
> The record did not outline any instances of missed advancement opportunities during the relevant period. Complainant testified that no such opportunities existed during the relevant period.
>
> The record shows that the Complainant spoke of one incident regarding Mr. Frank Pitts (Team Leader) "holding up his work." The record did not disclose the specific incident in question; however, the record showed that said responsibility was part of Mr. Pitt's duties as Liaison. The record did not identify any additional incidents to which Mr. Pitts was accused of "holding up" Complainant's work.
>
> The record shows that Complainant was moved from his former team to the new "3D" unit. Testimony outlines that said move were discussed with Complainant prior or the move in question. The record further shows that Complainant began to be supervised by Mr. Cherukuri when he moved to the new unit.
>
> The record discloses that there may have been an uncomfortable conversation between Mr. Cherukuri and Complainant during the relevant period. The record does not disclose that this conversation displayed any race, sex, or age animus.
>
> The record shows that Complainant and other employees within his work group were informed to leave a note when they left their workstations. The record further shows that this policy applied to all regardless of race, age or sex.
>
> Testimony provided by management for the employment matters at issue and the evidence of record was determined to be credible. Complainant failed to provide evidence sufficient to show management's testimony was not credible.

Govt's Ex. 6.

On May 11, 2005, Hunter requested a hearing before an administrative law judge (ALJ). On January 19, 2006, Hunter filed a motion to amend his complaint to include incidences of alleged discrimination dating back to 1991 on the grounds that the OCI Investigator focused only on acts after September 2004. The ALJ denied the motion on the grounds that Hunter had not sought EEO counseling within 45 days of those additional events. Hunter filed a second motion to amend to include a retaliation claim regarding events occurring after September 22, 2004. The ALJ denied the motion on the grounds it was untimely. At some point, the government filed a motion for summary judgment. On January 8, 2007, the ALJ reconsidered and granted Hunter's motion to amend and denied the government's motion for summary judgment, stating that the matter needed to be resolved at a hearing. Additionally, the ALJ directed the parties to exchange discovery.

Although not clear, it appears that the case stalled because on April 6, 2007, the ALJ issued an order to show cause why the case should not be dismissed. The ALJ ordered Hunter to "provide a written statement (together with any supporting evidence not previously submitted) describing (1) whether or not a vacant position announcement was issued, (2) whether [Hunter] applied for this vacant position, (3) was not selected for the position, and (4) evidence of a hostile work environment." Hunter filed a response as directed. The government replied.

On June 11, 2006, the ALJ held a hearing and issued a detailed bench decision dismissing Hunter's complaint. The ALJ found that (1) Hunter failed to make out a prima facie case of discrimination resulting in a hostile work environment because there was no evidence of a vacant position announced for which Hunter would have applied,

(2) even if there had been, Hunter did not seek EEO counseling within 45 days as required, (3) Hunter failed to present credible evidence showing that the conduct alleged was severe or pervasive enough to alter his work environment and create a hostile work environment. The ALJ also found that Hunter failed to establish a prima facie case of either hostile work environment or disparate treatment caused by retaliation.

On July 24, 2007, the government issued a final agency action implementing the ALJ's decision.

C. Court Proceedings

On October 22, 2007, Hunter filed his complaint. Count I alleges reverse race discrimination. Count II alleges reverse sex discrimination. Count III alleges age discrimination. Count IV alleges retaliation. The discrimination alleged in Counts I-III is described in the complaint as follows: "wherein he has alleged harassment (non-sexual), resulting in a hostile work environment, and that management has, repeatedly and consistently, held him back from career and promotional advancements." Complaint at ¶ 2.

The government was served with the complaint on November 30, 2007.

On January 4, 2008, the Court issued an order to show cause why the case should not be dismissed for lack of prosecution.

On January 7, 2008, the government filed the instant motion.

A status conference was held on January 31, 2008 at which the parties discussed a briefing schedule for the government's motion.

On February 1, 2008, the Court entered and Order Setting Response Filing

Deadline and Scheduling Motion Hearing, directing Hunter to file a response to the government's motion by March 3, 2008 and the government to file a reply by March 17, 2008. The parties later stipulated to extend these dates by a few days.

## III. Motion Standards

### A. Dismissal

A motion under Fed. R. Civ. P. 12(b)(6) motion seeks dismissal for a plaintiff's failure to state a claim upon which relief can be granted. "The court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 360 (6th Cir. 2001). To survive a motion to dismiss under Rule 12(b)(6), a "'complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n, 176 F.3d 315, 319 (6th Cir. 1999) (quoting Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988)). "[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, ___ U.S. ___, ___; 127 S. Ct. 1955, 1974 (2007). "[E]ven though a complaint need not contain "detailed" factual allegations, its factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." Assn. of Cleveland Fire Fighters v. City of Cleveland, Ohio, 502 F.3d 545, 548 (6th Cir. 2007), citing Twombly (internal citations and quotation marks omitted).

### B. Summary Judgment

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Rather, the nonmoving party must present "significant probative evidence" in support of its opposition to the motion for summary judgment in order to defeat the motion. See Moore v. Philip Morris Co., 8 F.3d 335, 340 (6th Cir. 1993); see also Anderson, 477 U.S. at 249-50. Additionally, and significantly, "affidavits containing mere conclusions have no probative value" in summary judgment proceedings. Bsharah v. Eltra Corp., 394 F.2d 502, 503 (6th Cir. 1968).

The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." In re Dollar Corp., 25 F.3d 1320, 1323 (6th Cir. 1994) (quoting Anderson, 477 U.S. at 251-52). The Court "must view the evidence in the light most favorable to the non-moving party." Employers Ins. of Wausau v. Petroleum

Specialties, Inc., 69 F.3d 98, 101 (6th Cir. 1995). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. See Anderson, 477 U.S. at 255. Only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law may summary judgment be granted. Thompson v. Ashe, 250 F.3d 399, 405 (6th Cir. 2001).

## IV. Legal Standards

Title VII prohibits discrimination in employment on the basis of race, color, religion, sex and national origin. See 42 U.S.C. § 200e-2. The ADEA bans discrimination in employment against persons over 40. See 29 U.S.C. § 623(a)(1), 631(a). Title VII is the exclusive remedy for federal employment discrimination claims. Brown v. General Services Admin., 425 U.S. 820 (1976). Likewise, the ADEA is the exclusive remedy for federal employment age discrimination claims. Ward v. Kennard, 133 F. Supp. 2d 54, 57 (D.D.C. 2000).

## V. Analysis

### A. Failure to Exhaust - Counts I-III

#### 1.

The government argues that Hunter's discrimination claims should be dismissed for failure to exhaust because he failed to seek timely EEOC counseling. Hunter says that he did timely seek EEO counseling and the government's actions constitute continuing violations.

Federal employees who allege that they have been victims of discrimination under Title VII must exhaust their administrative remedies. Benford v. Frank, 943 F.2d 609, 612 (6th Cir.1991) (stating "[t]he right to bring an action under Title VII regarding

equal employment in the federal government is predicated upon the timely exhaustion of administrative remedies ..."); see also Hall v. U.S. Postal Serv., 857 F.2d 1073, 1078 n. 4 (6th Cir.1988). The purpose of the requirement is to trigger an investigation, which gives notice to the alleged wrongdoer of its potential liability and enables the EEOC to initiate conciliation procedures in an attempt to avoid litigation. Davis v. Sodexho, Cumberland College Cafeteria, 157 F.3d 460, 463 (6th Cir. 1998) (citing EEOC v. Bailey, 563 F.2d 439, 447 (6th Cir. 1977)).

The regulation applicable to EEOC claims by federal sector employees, 29 C.F.R. § 1614.105 states in relevant part:

> (a) Aggrieved persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age or handicap must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter.
>
> (b) An aggrieved person must initiate contract with a Counsel within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.

The ADEA provides a federal employee two separate route for pursuing an age discrimination claim. An employee may invoke the procedure set forth above by seeking EEO counseling within 45 days. See 29 U.S.C. § 633a(b)-(c), 29 C.F.R. § 1614,103. Or, the employee may file the action directly in federal court, provided the employee gives the EEOC notice of intent to sue within 180 days of the alleged discriminatory activity. 29 U.S.C. § 633a(d), 29 C.F.R. § 1614.201(a).

Here, Hunter first contacted an EEO counselor on September 22, 2004. While Hunter complained of acts going back to 1991, the only actionable incidents, according to the government, could be those occurring after August 8, 2004 (45 days before

Hunter's contact with the EEO counselor). Moreover, the government says that Hunter never gave the EEOC notice of intent ro sue within 180 days of the alleged discrimination.

Hunter, however, has alleged discrimination resulting in a hostile work environment. In Nat'l Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002), the Supreme Court held that the Supreme Court recognized that the "very nature" of a hostile work environment "involves repeated conduct." Id. at ----, 122 S.Ct. 2061. The unlawful employment practice in a hostile work environment "occurs over a series of days or perhaps years and, in direct contrast to [claims based upon] discrete acts, a single act of harassment may not be actionable on its own." Id. "Given, therefore, that the incidents comprising a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of this single claim. In order for the charge to be timely, the employee need only file a charge within [the applicable time period] of any act that is part of the hostile work environment." Id. at 2075.

Following Morgan, the Court of Appeals for the Sixth Circuit decided McFarland v. Henderson, 307 F.3d 402, 408 (6th Cir. 2002), holding that "[a] hostile-work-environment claim thus has an effect similar to that of a continuing violation composed of successive discrete acts, in that the existence of the hostile work environment within the 45-day time limit causes the actionable violation to encompass conduct that occurred outside of the limit."

2.

Hunter's allegation of a discrimination resulting in a hostile work environment

would appear the save the complaint from dismissal for failure to exhaust based on the continuing violation theory. However, Hunter says he was subjected to a hostile work environment when he was not given sufficient opportunities for career and promotional advancement. The complaint outlines a litany of perceived discriminatory acts over the past fifteen years where he was denied such opportunities. For instance, he alleges that from 1992 to 1993 he was not promoted, offered schooling, or granted in-house training. He was not given college tuition in 1994, not promoted or trained in 1995, and this his conversion to a more promising assignment was delayed in an attempt to thwart his advancement in 1997. He also alleges he unsuccessfully applied for GS-11 position on various occasions between 1997 and 2003.

The problem with these allegations, as the government notes, is that they constitute discrete acts of discrimination. A suspension, like a termination, denial of transfer, or refusal to hire, constitutes a separate actionable "unlawful employment practice." Morgan, 536 U.S. at 114. As such, these allegations cannot be characterized as part of a continuing hostile work environment. See Sasse v. U.S. Dept. of Labor, 409 F.3d 773, 783 (6th Cir. 2005). In other words, discrete acts of discrimination cannot be used to invoke the continuing violation doctrine. Thus, because Hunter failed to seek EEO counseling within 45 days of these discrete acts, they are time-barred and cannot form the basis for his hostile work environment claim.

3.

Hunter has, however, alleged conduct involving harassment by his supervisor Frank Pitts (Pitts) from 2002 to 2004. These allegations, as explained below, are non-discrete acts which may form the basis for a hostile work environment claim and are

therefore not subject to dismissal as time-barred. Whether the allegations survive summary judgment, however, is another matter addressed below.

B. Failure to Establish a Hostile Work Environment - Counts I-III

1.

The government also argues that summary judgment is appropriate on Hunter's discrimination claims because the evidence is insufficient to establish a hostile work environment. The government focuses on the incidents involving Pitts which are not time barred.

In Harris v. Forklift Systems, Inc., 510 U.S. 17 (1993), the Supreme Court stated the standard applicable for hostile work environment claims:

> When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated.
>
> . . .
>
> Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment-an environment that a reasonable person would find hostile or abusive-is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.

Id. at 21-23 (internal quotes and citations omitted).

In Williams v. General Motors, 187 F.3d 553 (6th Cir. 1999), the Sixth circuit affirmed these principles and the "totality of the circumstances" approach, stating that "the issue is not whether each incident of harassment standing alone is sufficient to sustain the cause of action in a hostile environment case, but whether-- taken together--the reported incidents make out such a case." 187 F.3d at 562. "Among the factors to be considered are 'the frequency of the discriminatory conduct; its severity;

whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Clark v. United Parcel Serv., Inc., 400 F.3d 341, 355 (6th Cir. 2005)(quoting Harris, 510 U.S. at at 23). "The harassment should be ongoing, rather than a set of isolated or sporadic incidents." Id. (citing Allen v. Mich. Dep't. of Corr., 165 F.3d 405, 411 (6th Cir.1999)). "The plaintiff must show that the working environment was both objectively and subjectively hostile. Id. (citing Harris, 510 U.S. at 21-22).

2.

Hunter asserts that he was subjected to harassment by Pitts from 2002 to 2004. Hunter alleges that every 4-6 weeks Pitts would "corner Mr. Hunter in his work station" and "yell orders at him, point with his hand close to Mr. Hunter's face, and, whether purposefully or inadvertently, spit on him as he talked." Complaint at ¶ 82. Hunter further asserts that in September 2004, Pitts sabotaged a work package that Hunter prepared and delayed it for a week.

The government says that these allegations, even if true, simply do not amount to a hostile work environment. Hunter did not directly addressed the government's argument, and instead says that more discovery is needed but he does not specify what discovery is needed. The need for discovery is addressed below. The government's argument is well-taken. Assuming Hunter's allegations with respect to Pitts are true, these facts are not sufficient to create a genuine issue of material fact as to whether Pitts retaliated against Hunter. This is particularly so in light of the detailed administrative proceedings. Although Hunter says the administrative proceedings were "flawed," he does not elaborate on the how he believes they were flawed. The

government is entitled to summary judgment on Hunter's discrimination claims resulting in a hostile work environment. Moreover, while the government does not raise this point, there is no evidence that Pitt's actions against Hunter had anything to do with, or were taken because of, his race, sex, or age.

C. Retaliation - Count IV

1.

The government argues that it is entitled to summary judgment on Hunter's retaliation claim. To establish a prima facie case of retaliation, Hunter must show that: (1) he engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff, or he was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the adverse employment action or harassment. Morris v. Oldham County Fiscal Court, 201 F.3d 784, 792 (6th Cir. 2000); Canitia v. Yellow Freight Sys., Inc., 903 F.2d 1064, 1066 (6th Cir. 1990)(outlining previous standard for prima facie Title VII retaliatory harassment case).

If Hunter establishes a prima facie case, the burden of production of evidence shifts to the defendants to "articulate some legitimate, nondiscriminatory reason" for its actions. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).

The government may also prove an affirmative defense to retaliatory harassment by a supervisor by demonstrating: "(a) that the employer exercised reasonable care to prevent and correct promptly any ... harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective

opportunities provided by the employer to avoid harm otherwise." Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 765 (1998).

If the government meets this burden, then the burden of production shifts back to Hunter to demonstrate that the proffered reason is a pretext. McDonnell Douglas, 411 U.S. at 804. When the burden shifts back to Hunter, although he must come forward with evidence that the company's reason for the employment action is false, he need not present independent evidence that the proffered reason is pretext for discrimination. Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 148 (2000) ("[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.").

2.

Hunter's retaliation claim is based on events occurring after he filed his formal EEO complaint on November 9, 2004. The alleged acts of retaliation are (1) his work was held up by Team Leader Frank Pitts, (2) he was moved to a new unit by his supervisor, Art Adlam, (3) he was required to leave a note whenever he left his work station, and (4) Team Leader Pad Cherukuri told him that any high school kid could perform his job. See Complaint at ¶¶ 103, 114-116.

As noted above, these allegations were the subject of a detailed administrative process which resulted in a finding from an ALJ that the allegations were not substantiated. Again, Hunter complains that the administrative proceedings were flawed, but fails to explain how or why the Court should disregard the evidence presented during those proceedings.

Hunter has failed to make out a prima facie case for several reasons. First, there is no evidence that Pitts, Adlam, or Cherukuri knew that Hunter had filed an EEO complaint. Hunter simply has no evidence of a causal connection.

Second, none of the complained incidents constituted an adverse employment action. An "adverse employment action" requires a "materially adverse change in the terms and conditions of employment." Hollins v. Atlantic Co., 188 F.3d 652, 662 (6th Cir.1999). This can include "a loss in pay or benefits, a detrimental change in responsibilities, a negative change in the terms and conditions of employment, or some such actual and unfavorable change in job status," Birone v. Indian River School, 145 F.3d 1329 (table), 1998 WL 199791, at *4 (6th Cir. April 15, 1998), as well as "a termination in employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, ... or other indices that might be unique to a particular situation." White v. Burlington Northern & Santa Fe Ry. Co., 310 F.3d 443, 450 (6th Cir. 2002). De minimus employment actions are not actionable, as the "change in employment conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." White, 310 F.3d at 450 (citations and quotation marks omitted). See also Kocsis v. Multi-Care Management, Inc., 97 F.3d 876, 885 (6th Cir. 1996) (stating "[R]eassignments without salary or work hour changes do not ordinarily constitute adverse employment decisions in employment discrimination claims." ) (citing Yates v. Avco Corp., 819 F.2d 630, 638 (6th Cir.1987)). All of the actions Hunter complains of are of a de minimus nature.

Additionally, even assuming Hunter made out a prima facie case, there is no evidence that the government's reasons for its actions were pretextual. Pitts explained

during the administrative proceedings, under oath, that he stopped one of Hunter's work projects and indicated it needed more information, but the issue was resolved in a matter of days. As to the transfer, the record shows that Hunter desired a transfer because he did not get along with Pitts. He was then transferred and no longer working under Pitts. As to the note, the record shows that Hunter conceded that everyone on the team was told that if they were going to leave their desk, they had to leave a note stating where they were going. As to the comment by Cherukuri that any high school kid could perform Hunter's job, the record shows the statement was made in the context of indicating a particular type of work was not difficult. At most, the comment was a petty annoyance. No amount of discovery could change these facts. The government is therefore entitled to summary judgment on Hunter's retaliation claim.

### D. The Need for Discovery

In his response Hunter argued that discovery is needed and therefore dismissal, or summary judgment, is premature. On April 2, 2008, the Court held a hearing on the government's motion. At the hearing, Hunter's counsel again asked that he be permitted to engage in discovery prior to a decision on the motion. The Court directed Hunter's counsel to submit a letter outlining his discovery requests so the Court could determine whether discovery was necessary.

In his letter, counsel says he wishes to take the depositions of 4 named persons who were Hunter's co-workers or supervisors during the relevant time. He also asks to be allowed 25 unspecified interrogatory questions. He further asks for the following document production: (1) Hunter's personnel file, (2) documentation relating to individuals hired to positions within Hunter's job classifications for the past 5 years, (3)

documentation indicating individuals promoted/converted from positions within Hunter's classification for the last 5 years, (4) any and all documentation relating to Hunter's Inspector General complaint pertaining to not being converted to Engineer 830 series, (5) any and all documentation pertaining to union grievances in relation to not being converted to Engineer 830 series, and (6) records within the investigative filed of Hunter's EEO complaints, to the extent they have not already been provided.

The government, at the Court's request, submitted a letter in response. The government says that none of the discovery is needed in order to resolve the instant motion. The Court agrees.

As the government points out, it moved to dismiss Hunter's discrimination claims (found in Counts I-III) on the grounds that Hunter failed to timely seek EEO counseling within 45 days of being denied various promotions. The Court, for reasons explained above, agrees. No amount of discovery is necessary to this issue.

The government moved to dismiss Counts I-III on the grounds that the complaint fails to state a hostile work environment claim, or alternatively, that summary judgment is appropriate. Even assuming Hunter's allegations of denial of promotions were not time barred, no discovery is necessary regarding what promotions Hunter did not get; he should know that. Moreover, as explained above, none of Hunter's allegations of harassment, particularly involving conduct by Pitts, viewed in the light most favorable to him, rise to an actionable hostile work environment claim.

As to Count IV, claiming retaliation, the government concedes that the depositions of Art Adlam and Pad Cherukuri would relate to 2 of Hunter's 4 allegations of retaliation. However, since the Court has viewed the facts in Hunter's favor, their

depositions are not needed. Accepting Hunter's allegations of retaliation as true, as the Court must on summary judgment, they do not rise to an actionable retaliation claim.

SO ORDERED.

           s/Avern Cohn
           AVERN COHN
           UNITED STATES DISTRICT JUDGE

Dated: May 1, 2008

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, May 1, 2008, by electronic and/or ordinary mail.

           s/Julie Owens
           Case Manager, (313) 234-5160